# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOEY DEAN JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-15-108-RAW-SPS |
| ) | |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Joey Dean Johnson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the decision of the Commissioner should be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born March 12, 1985, and was twenty-eight years old at the time of the administrative hearing (Tr. 86). He completed the eighth grade, and has no past relevant work (Tr. 23, 86). The claimant alleges he has been unable to work since an amended onset date of April 12, 2009, due to multiple surgeries on his right ankle (Tr. 216).

## Procedural History

On August 24, 2010, the claimant applied for benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 19, 2013 (Tr. 16-24). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(b), *i. e.*, he could frequently and occasionally lift/carry ten pounds, stand/walk at least two hours out of an eight-hour workday, and sit at least six hours out of an eight-hour workday, all with normal breaks,

which the ALJ attributed to the claimant's fibular fracture and ankle surgeries. Additionally, the ALJ found that the claimant should work in an air-conditioned and heated environment due to his asthma (Tr. 19). The ALJ concluded that although the claimant had no past relevant work to return to, he was nevertheless not disabled because there was work he could perform, *i. e.*, touch up screener and final assembler (Tr. 23-24).

### Review

The claimant contends that the ALJ erred by: (i) failing to specify relevant listings in his step three analysis and further failed to discuss his reasons for finding that the claimant did not meet a listing; (ii) failing to properly assess his credibility; and (iii) by failing to properly assess his RFC, specifically, the findings related to his ability to stand/walk at least two hours in a workday, as well as his obesity and asthma. The undersigned Magistrate Judge agrees that the ALJ failed to properly assess *all* the claimant's impairments at step four, and the decision of the Commissioner should therefore be reversed.[2]

The ALJ determined that the claimant had the severe impairments of history of right fibular fracture, history of multiple surgeries on right ankle, and asthma (Tr. 18). The record reflects that the claimant had a comminuted displaced and overriding fracture of the mid-fibula and comminuted displaced overriding fibular fracture with complete lateral ankle dislocation in April 2009, and reported he had been beaten by several other men (Tr. 321-322). They placed his right foot in an ankle boot and it took three days

---

[2] Although the undersigned Magistrate Judge finds that reversal is largely based on the claimant's third contention, on remand the ALJ should take care to ensure that the listings are properly assessed and a proper credibility analysis is performed as well.

before he could ambulate effectively; he was also treated for hypertension during this hospital stay (Tr. 328). The following month, he underwent a stabilization procedure in which two screws were inserted to relocate the right ankle (Tr. 329).

On July 7, 2009, state reviewing physician Janet Rodgers, M.D. reviewed the medical record and determined that the claimant could perform medium work with no postural or environmental limitations (Tr. 368). Dr. Rodgers noted that he was expected to have this RFC one year following his initial April 2009 injury (Tr. 368).

The claimant was largely treated at Redbird Smith Indian Clinic and notes reflect treatment for major right ankle trauma, hypertension, GERD, and asthma (Tr. 377). In 2009, the claimant's weight was noted to be over 285 pounds (Tr. 377-378). On July 20, 2010, the claimant underwent another procedure, due to malunion of his right ankle fracture with nonunion of fibula, residual widening of distal tibiofibular joint, and deltoid ligament laxity (Tr. 406). He was to be nonweightbearing at least six weeks following this procedure (Tr. 404). An x-ray of the claimant's right ankle on October 27, 2010, noted severe degenerative disease of the tibiotalar joint, and a December 2010 x-ray revealed healing, fixated fractures of the fibula with satisfactory alignment and position, as well as moderate tibiotalar posttraumatic osteoarthritis (Tr. 382-383). The claimant continued to have pain and difficulty with the right ankle, and his orthopedic surgeon referred to it as a "very difficult circumstance," noting he had advanced degeneration of the ankle joint, although the fractures appeared to be healed by March 28, 2011 (Tr. 396). Accordingly, he underwent an instrumentation removal on April 29, 2011 (Tr. 393).

By 2012, the claimant's weight had reached 290 pounds, and his diagnosis included traumatic arthritis of the right ankle (Tr. 430, 438). The claimant received an injection in his right ankle on August 28, 2012, and requested pain medication, but the clinic did not prescribe narcotics for nonsurgical patients (Tr. 429). By January 2013, notes from Cherokee Nation Health Services indicate that the claimant had "difficulty walking short distances, ascending/descending stairs, and squatting due to pain/reduced ROM/weakness s/p [right] ankle throughout ankle joint. He has pain [with] palpation of joint line of talocrural joint and [with] palpation of Achilles tendon, indicating some pain may be related to inflammation/tendinosis. He has moderate swelling at R ankle when compared bil" and it was determined that he would benefit from physical therapy (Tr. 423).

In his written opinion at step two, the ALJ made findings as to the claimant's severe impairments (related to his right ankle and asthma) but did not note or discuss any nonsevere impairments (Tr. 18). Specifically, the ALJ made no mention of the claimant's obesity at any point in his opinion. At step four, the ALJ summarized the claimant's hearing testimony and the medical evidence related to his right ankle injuries (Tr. 19-23). He gave no weight to the opinions of the state reviewing physicians, and there was no opinion from a consultative physician in the record. He noted one physician had stated the claimant "may be able to find a job that required less weightbearing/ambulation than construction," and appeared to use this as the sole basis for finding the claimant could perform sedentary work as discussed above (Tr. 22). He then determined that the claimant was not disabled (Tr. 23-24).

-6-

The claimant asserts that the ALJ erred in formulating his RFC, and the undersigned Magistrate Judge agrees. This Court and the Tenth Circuit have repeatedly stated that, once the ALJ determined that the claimant had *any* severe impairment, any failure to find additional severe impairments will not be a sole basis for reversal and is considered harmless. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. Nevertheless, the ALJ *is required* consider the effects of all the claimant's impairments (individually and in combination) and account for them in formulating the claimant's RFC at step four, which he did not do. Additionally, the ALJ failed to properly assess the combined effect of all the claimant's impairments – both severe and nonsevere – in assessing his RFC. Both of these errors require reversal. *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic

pain.  He did not include any such limitations in either his RFC determination or his hypothetical question.  Nor did he explain why he excluded them.  In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").  He should *at least* have discussed the impact any nonsevere impairments, on the claimant's severe impairments.  This is particularly important when there is repeated evidence of documented difficulty ambulating due to his right ankle problems, and the claimant's ability to ambulate may have been further affected by his obesity.

Indeed, the ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 1.00 Musculoskeletal System, Q.  However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment."  Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002).  Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on the information in the case record."  *Id.*  Here, the ALJ failed to even consider the claimant's obesity as required by Soc. Sec. Rul. 02-01p, much less *how* the claimant's obesity and co-existing impairments actually affected the RFC.  *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting that "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC."), *citing* Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *1, *5-*6,

*7. *See also DeWitt v. Astrue*, 381 Fed. Appx. 782, 785 (10th Cir. 2010) ("The Commissioner argues that the ALJ adequately considered the functional impacts of DeWitt's obesity, given that the ALJ's decision recognizes she is obese and ultimately limits her to sedentary work with certain restrictions. But there is nothing in the decision indicating how or whether her obesity influenced the ALJ in setting those restrictions. Rather it appears that the ALJ's RFC assessment was based on 'assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments' – a process forbidden by SSR 02-1p." ), *citing* Soc. Sec. R. 02-1p, 2002 WL 34686281, at *6.

The undersigned Magistrate Judge acknowledges that the record in this case is sparse with regard to formal evaluations of the claimant's physical impairments, as well as the ALJ's broad latitude in deciding whether to order consultative examinations. *Hawkins v. Chater*, 113 F.3d 1162, 1166-67 (10th Cir. 1997) (Once the claimant has presented evidence suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment."), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). The ALJ should nevertheless consider recontacting the claimant's treating physicians, requesting further medical records, and/or ordering a consultative examination to properly account for the claimant's physical impairments. *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain

all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). A consultative examination may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or when additional tests are needed to explain a diagnosis already in the record, but an ALJ does not generally have a duty to order a consultative examination unless requested by counsel or the need is clearly established in the record. *See Hawkins*, 113 F.3d at 11666, 1168. The ALJ could also request that a state agency physician again review the record. A more recent review or examination would have been helpful in this case, because in its absence the ALJ had no opinions as to the claimant's physical RFC. The ALJ's discretion is not boundless, and under the circumstances in this case, the ALJ should at least have explained why he failed to further develop the record.

Because the ALJ failed to properly evaluate *all* the claimant's impairments singly and in combination, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis of the claimant's impairments. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to

this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2016.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**